**Original filed 5/12/06**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ADAM LEROY CARIS, | ) | No. C 03-3881 JF (PR) |
| Petitioner, | ) ) ) | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| vs. | ) ) | |
| DERRAL G. ADAMS, Warden, | ) ) | |
| Respondent. | ) ) | |

**INTRODUCTION**

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for conspiracy to commit murder and first degree murder (see Cal. Penal Code § § 182(a)(1), 187). On March 6, 1998, Petitioner was sentenced to thirty-two years to life in state prison. Petitioner appealed his conviction. The state appellate court affirmed the judgment on May 31, 2002. The state supreme court denied a petition for review on August 21, 2002. Petitioner filed the instant federal habeas petition on August 21, 2003.

Petitioner raises the following claims for relief: (1) the trial court erred in prohibiting his counsel from commenting during closing argument on the timing of his co-defendant's election to testify only on sur-rebuttal; (2) the prosecutor's knowing use of perjured testimony by a witness violated Petitioner's rights to a fair trial and due process; (3) the trial court's denial of

Petitioner's severance motion violated his right to a fair trial and deprived him of due process; (4) he was denied effective assistance of counsel by his trial counsel's failure to preserve issues for appeal, failure to request certain jury instructions, failure to object to the court's and the prosecutor's use of "the People" during trial; and (5) the trial court's denial of his motion for new trial violated his rights to a fair trial and due process.

This Court ordered Respondent to show cause why the petition should not be granted. Respondent filed an answer addressing the merits of the petition, and Petitioner filed a traverse. After reviewing the papers and the relevant portions of the record, the Court concludes that Petitioner's claims are without merit and will deny the petition.

## FACTUAL BACKGROUND

The pertinent facts are taken from the unpublished opinion of the California Court of Appeal.[1] On September 27, 1993, at 2:21 a.m., San Jose Police Officer Bridgette Blahut found the body of Paul Farfan in Watson Park. Farfan had been shot five times. Farfan was a drug dealer and member of the Northern Structure, a prison and street gang subsidiary of the Nuestra Familia prison gang. Farfan's parole officer told police officers that Farfan's girlfriend was Jessica Salazar. Officers traced Salazar to the Arena Hotel where Oliverez, Jeannette Alarcon (Oliverez's wife), and another person were also staying. Officers found Farfan's pouch inside Alarcon's purse. Inside the pouch were two guns, ammunition, and a small amount of methamphetamine. Officers found a large amount of dust on Alarcon's Geo Prizm automobile that was consistent with the dirt in Watson Park. They also found Petitioner's fingerprints in three places on the car. The car's tire tread pattern was consistent with patterns near the crime scene. A bloodstain on the seat of the car was consistent with Farfan's blood. A dent in the door frame was consistent with a bullet strike. In the trunk, officers found two pairs of bloodstained athletic socks that were similar to socks belonging to Oliverez, a pair of Reebok shoes with bloodstained shoelaces, and a pair of Nike shoes. The blood on the socks and Reebok shoes was consistent with Farfan's blood. The sizes of the shoes were different and consistent with the

---

[1] Respondent's Ex. 3 (Unpublished Opinion of California Court of Appeal, Sixth Appellate District, <u>People v. Adam Leroy Caris</u>, Case No. H018246, May 31, 2002) at 2-4.

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.03\Caris881den                    2

different sizes worn by Oliverez (the Reebok shoes) and Petitioner (the Nike shoes). Police found a paper in the car that had Farfan's telephone number written on it and another paper that had Petitioner's address written on it.

Oliverez told the police that, between 11:00 p.m. and midnight on the night of the murder, he had borrowed Alarcon's car, driven to Farfan's brother's home, picked up Farfan, and drove to Watson Park to drink and talk. He added that he and Farfan stayed in the park for twenty minutes and, afterward, he drove to an apartment, dropped off Farfan, and returned to the Arena Hotel.

Robert Romero told the police that Petitioner had told him that he, Petitioner, had shot Farfan five times after Petitioner and Oliverez had set up Farfan to be killed. Jesus Avila testified that Petitioner had told him in jail that he, Petitioner, had killed Farfan because Farfan was "disrespecting" Jerry Salazar by "messing with" Salazar's wife.

Petitioner was a member of the Northern Structure. Oliverez was either a member or sympathizer of the gang. The prosecution's theory was that Farfan's murder was a "gang hit" that was ordered by Chente Arroyo because Farfan and Manuel Nanez had spent drug profits instead of sending the profits to incarcerated gang members. Arroyo was under a murder indictment with other members of the Northern Structure and was the highest ranking Nuestra Familia and Northern Structure member in custody. The Grand Jury accepted the prosecution's theory, and the indictment alleged that Oliverez and Petitioner had committed the murder in association with a criminal street gang an allegation that subjected the defendants to a ten-year sentence enhancement. At trial, the prosecution introduced general evidence about the organization and activities of Nuestra Familia and Northern Structure and specific evidence about the involvement and activities in gang business of Farfan, Oliverez, Petitioner, and others. The jury, however, found the gang enhancement allegations not true.

Petitioner testified in his own defense and related the following: Petitioner joined the

Northern Structure in 1986 while he was in prison. On the evening of the murder, Oliverez called him and asked whether he wanted to party with Salazar's wife and Farfan. Petitioner agreed. Oliverez picked him up in the Geo Prizm. Farfan was in the car. The three drove to Milpitas. Oliverez and Farfan argued in the front seat. The three encountered police near their destination and, because Farfan indicated that he possessed a gun, drove back to San Jose and Watson Park. Oliverez and Farfan escalated their argument. The three got out of the car. Petitioner walked 30 feet away to urinate. When he turned to walk back to the car, he saw Oliverez and Farfan struggling. He then heard a gunshot and saw a flash. He heard more shots and saw Oliverez holding a gun. Oliverez was pulling Farfan out of the car. Farfan called to Petitioner to help get Oliverez away. Farfan jumped out of the car and ran around to the front. Oliverez followed. Petitioner saw the two on the ground, heard shots, and saw a flash. Oliverez broke free, stepped away, and shot Farfan.

Petitioner started to run away, but Oliverez exclaimed that there had been a green light (murder contract) on Farfan because of Farfan's relationship with Salazar's wife. Petitioner got into the car on the driver's side and crawled to the passenger side. Oliverez drove Petitioner to Petitioner's girlfriend's home. Petitioner cried and told his girlfriend that Oliverez had shot Farfan.

Oliverez did not testify in his own defense. After the prosecution's rebuttal case, however, Oliverez testified in surrebuttal. He related the following: Oliverez and Farfan decided to party on the evening of the murder. Oliverez picked up Farfan in the Geo Prizm. Farfan was carrying a black duffel bag. They drove to Milpitas. They encountered police near their destination and, because Farfan indicated that he possessed a gun, drove back to San Jose and picked up Petitioner. The three drove to Watson Park. Oliverez exited the car to go urinate. As he walked back to the car, he heard a gunshot. He saw Petitioner jumping from the driver's side of the car. He heard another shot and saw Farfan run away. Petitioner chased after Farfan and shot him again. He came back to the car with a gun in his hand. He ordered him to drive out of the park. In the car, Petitioner exclaimed that

Farfan "had it coming, fuck with my old lady." Oliverez dropped Petitioner off at Petitioner's home and drove to the Arena Hotel. He took Farfan's black pouch into the hotel and left Petitioner's shoes in the trunk.

## DISCUSSION

**A. Standard of Review**

This Court will entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court may not grant a petition with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1).

"Under the 'contrary to' clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 407 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

A federal court making the "unreasonable application" inquiry in a habeas case should ask whether the state court's application of clearly established federal law was "objectively

unreasonable." Id. at 409. The "objectively unreasonable" standard does not equate to "clear error" because "[t]hese two standards . . . are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 123 S. Ct. 1166, 1175 (2003) (citation omitted). This standard of review, however, does not relieve a federal court of review from its duty to examine and analyze the state court's application of federal law.

A federal habeas court may grant the writ it if concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

**B. Petitioner's Claims**

(1) Prohibiting Petitioner's Counsel from Commenting During Closing Argument

At trial, Petitioner and Oliverez each testified that the other shot and killed Paul Farfan. Petitioner testified at trial after Oliverez rested his case. Oliverez then testified on sur-rebuttal and blamed Petitioner for the crime. Before final arguments to the jury, Oliverez's counsel asked the trial court to preclude Petitioner's counsel from commenting on Oliverez's failure to testify during the presentation of his defense. Counsel argued that Oliverez had the right to remain silent until he exercised his right to testify on his own behalf. Petitioner's counsel countered that he had the right to defend his client and to raise all reasonable inferences on credibility and on the reliability of the witnesses. The trial court balanced Oliverez's constitutional right to remain silent against Petitioner's right to comment on that silence, and ruled that Petitioner's counsel could not comment on the fact that Oliverez waited until sur-

rebuttal to present his version of events.

Petitioner contends he was denied his rights to counsel and to due process when the trial court erroneously ruled that his counsel could not comment on the fact that Oliverez waited until sur-rebuttal to present his version of events. Petition at A-3–A-6. He argues that he was deprived of a meaningful opportunity to argue adverse inferences as to Oliverez's credibility, which, according to Petitioner, was critical given the jury's rejection of the gang-motive theory. See id. Petitioner contends that the trial court's error was not harmless beyond a reasonable doubt. See id. The prosecution conceded that the ruling was erroneous. Ex. 3 at 14.

The Supreme Court has determined that comments made during summation that call the jury's attention to the fact that the defendant had an opportunity to hear other witnesses testify and to tailor his testimony do not violate a defendant's constitutional rights and are a proper way to impeach the defendant's testimony. Portuondo v. Agard, 529 U.S. 61, 65-74 (2000). The Court reasoned that "it *is* natural and irresistible for a jury, in evaluating the relative credibility of a defendant who testifies last, to have in mind and weigh in the balance the fact that he heard the testimony of all those who preceded him." Id. at 67-68. Accordingly, it held that "[a]llowing comment upon the fact that a defendant's presence in the courtroom provides him a unique opportunity to tailor his testimony is appropriate – and indeed, given the inability to sequester the defendant, sometimes essential – to the central function of the trial, which is to discover the truth." Id. at 73.

The state appellate court found that "even though [Petitioner] was prohibited from commenting on Oliverez's opportunity to tailor his testimony, it was 'inevitable' that the jury would infer that Oliverez had the opportunity to tailor his testimony." Ex. 3 at 15. Moreover, the court noted that Petitioner misstated the nature of the case. Id. It reasoned that even if Petitioner had been allowed to comment on Oliverez's opportunity to tailor his testimony and to

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.03\Caris881den          7

suggest that Oliverez was lying, the jury would have found that Oliverez was the aider and abettor rather than Petitioner.  See id. at 15-16.  In any event, the jury at least would have convicted Petitioner as an aider and abettor, given that it convicted Petitioner as a conspirator and Petitioner was present at the murder scene without having withdrawn from the conspiracy.  See id.

The state appellate court's determination was not unreasonable.  Although the trial court should have allowed Petitioner's counsel to comment on Oliverez's failure to testify during the presentation of his defense, the denial of such comment did not have a substantial or injurious effect on the jury's verdict.  The jury inevitably could infer that Oliverez had the opportunity to tailor his testimony.  Furthermore, given the facts presented at trial, Petitioner would have been convicted as an aider and abettor.  Based upon the record, the appellate court's rejection of Petitioner's claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

(2) Prosecutor's Knowing Use of Perjured Testimony

Petitioner contends that his rights to a fair trial and due process were violated by the prosecution's knowing use of perjured testimony, which resulted in highly inflammatory but irrelevant criminal street gang evidence being admitted at trial.  Petition at A-6.  Petitioner claims that the prosecution's witness, Jerry Salazar, committed perjury and that the police knew or reasonably should have known that a "green light" order had never been issued from the jail for Paul Farfan.  Petition at A-7.  The state appellate court held that Petitioner failed to show affirmatively that any error occurred.  Ex. 3 at 13.  The court acknowledged that Salazar's June 1993 interview with the grand jury lasted three hours and the transcript of that testimony is at least seventy pages in length.  Id.  The portion of the tape recording played to the jury was only

three pages in length, and Salazar testified that the excerpted portion was taken out of context. Salazar also testified that he talked to the District Attorney's office three or four times, for an hour to an hour and a half each time, in December 1993 and January 1994. Salazar testified specifically that in an interview on December 7, 1993, he told the District Attorney's office that Chente Arroyo had directed the "green light" on Farfan and Nanez. However, according to the appellate court, "the record establish[ed] no more than that Salazar made inconsistent statements' before he testified, a fact that Oliverez and [Petitioner] fully exposed in cross-examination." Id. at 14.

Mere inconsistencies in testimony do not violate due process unless the evidence is "of such quality as necessarily prevents a fair trial." Windham v. Merkle, 163 F.3d 1092, 1103 (9th Cir. 1998); Kealohapauole v. Shimoda, 800 F.3d 1463, 1466 (9th Cir. 1986). Ultimately, the appropriateness of habeas relief depends on whether even with the perjured testimony or false evidence petitioner received a fair trial. See Kyles v. Whitley, 514 U.S. 419, 434 (1995) (using test in context of suppression of evidence); Grisby v. Blodgett, 130 F.3d 365, 367-38 (9th Cir. 1997) (using test in context of perjured testimony). A violation will be found, and relief will be granted, if it is shown that the perjured testimony or false evidence reasonably could be viewed as putting the entire case in such a different light as to undermine confidence in the verdict. See Kyles, 514 U.S. at 435.[2]

Here the inconsistencies in Salazar's testimony did not necessarily prevent Petitioner from receiving a fair trial. Salazar's testimony was subject to vigorous cross-examination, and Petitioner's counsel highlighted the inconsistencies.

Further, as the appellate court noted, Salazar's statements were not the only evidence

---

[2] Once constitutional error has been found under this test, it cannot subsequently be found harmless under Brecht v. Abrahamson, 507 U.S. 619 (1993). See Kyles, 514 U.S. at 436 & n.9.

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.03\Caris881den         9

related to gang-motive. Ex. 3 at 14. There was evidence indicating that Petitioner boasted to Avila that he had killed Farfan because Farfan was disrespecting Salazar by "messing with" Salazar's wife. Id. Such evidence indicating membership in a gang is appropriate if it relates to motive or bias. United States v. Abel, 469 U.S. 45, 54 (1984). It is clear that Petitioner's involvement in the Northen Structure gang established a motive for the murder. The evidence at issue was not so prejudicial as to render the trial unfair, because the jury did not find the gang enhancements to be true. Thus, the appellate court's rejection of Petitioner's claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent, nor was it based upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

   (3) <u>Denial of Severance Motion</u>

   Next, Petitioner alleges that the trial court erred in denying his motion to sever his trial from that of his co-defendant Oliverez. Petition A-8–A-9. He maintains that he and Oliverez presented irreconcilable, antagonistic defenses. Id. He elaborates that the complex layers of proof in the case presented a substantial probability of jury confusion as to the prosecution's burden of proof. Id.

   A joinder, or denial of severance, of co-defendants or counts may prejudice a defendant sufficiently to render his trial fundamentally unfair in violation of due process. <u>Grisby v. Blodgett</u>, 130 F.3d 365, 370 (9th Cir. 1997); <u>Herd v. Kincheloe</u>, 800 F.2d 1526, 1529 (9th Cir. 1986). It also may result in the deprivation of the specific constitutional guarantee of the right of confrontation. Id.

   A federal court reviewing a state conviction under 28 U.S.C. § 2254 does not concern itself with state law governing severance or joinder in state trials. <u>Grisby</u>, 130 F.3d at 370. Nor is it concerned with the procedural right to severance afforded in federal trials. Id. Its inquiry is

limited to a petitioner's right to a fair trial under the United States Constitution. In order to prevail, the petitioner must demonstrate that the state court's joinder or denial of his severance motion resulted in prejudice great enough to render his trial fundamentally unfair. Id. In addition, the impermissible joinder must have had a substantial and injurious effect or influence in determining the jury's verdict. Sandoval v. Calderon, 241 F.3d 765, 772 (9th Cir. 2000).

There is a "high risk of undue prejudice whenever . . . joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible." United States v. Lewis, 787 F.2d 1318, 1322 (9th Cir. 1986). Severance also may be in order when a defendant "shows that the core of the co-defendant's defense is so irreconcilable with the core of his own defense that the acceptance of the co-defendant's theory by the jury precludes acquittal of the defendant." United States v. Throckmorton, 87 F.3d 1069, 1072 (9th Cir. 1996). However, conflicting and antagonistic defenses at trial do not necessarily require a severance, even if hostility surfaces or defendants seek to blame one another. United States v. Brady, 579 F.2d 1121 (9th Cir. 1978).

The state appellate court found that "because defendants were charged with having committed common crimes involving common events and victims this was a 'classic case' for a joint trial." Ex. 3 at 11. Although the trial court could have accepted Petitioner's arguments and granted a severance, Petitioner fails to demonstrate that he received an unfair trial because of the joinder. The jury was instructed on the prosecution's burden of proof and the obligation to give separate consideration to each defendant and to each charge. The jury could have accepted Petitioner's assertion that his co-defendant shot Farfan, but it chose not to do so. The defenses raised by Oliverez were not so irreconcilable with Petitioner's theory of the case as to prejudice Petitioner's own defense. The appellate court's determination was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent, nor was it

based upon an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

(4) <u>Ineffective Assistance of Counsel</u>

Petitioner next contends that he received ineffective assistance of counsel at trial based upon counsel's failure to preserve issues for appeal, failure to require certain jury instructions, and failure to object to the trial court's and prosecutor's use of "the People" during trial.  Petition at A-9–A-11.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  <u>Id.</u>  The right to effective assistance counsel applies to the performance of both retained and appointed counsel without distinction.  See <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 344-45 (1980).

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must make two separate showings.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  <u>Strickland</u>, 466 U.S. at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  <u>Id.</u>

The Strickland framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. See Williams (Terry) v. Taylor, 529 U.S. 362, 404-08 (2000). A defendant can make out a claim of ineffective assistance of counsel only by pointing to specific errors made by trial counsel. See United States v. Cronic, 466 U.S. 648, 666 (1984).

(a) Failure to Preserve Issues for Appeal

Petitioner contends that his counsel failed to preserve significant issues for appeal on several occasions during trial. Petition at A-10. However, as set forth below, these issues lack merit and did not result in any prejudice. Accordingly, counsel's failure to preserve the issues for appeal did not meet the standard for ineffective assistance of counsel.

(b) Failure to Request a Modified CALJIC No. 3.18 Instruction

The trial court instructed the jury with the modified language of CALJIC No. 3.18 as follows: "You should view the testimony of an accomplice called as a witness by the prosecution which tends to incriminate a defendant with distrust. This does not mean that you may arbitrarily disregard that testimony. [¶] You should give that testimony the weight you think it deserves after examining it with care and caution and in light of all the evidence in the case."

Petitioner contends that trial counsel was ineffective for not objecting to this instruction because it limits the caution in viewing accomplice testimony with distrust to testimony of accomplices called as witnesses by the prosecution. Petition at A-10. Thus, Petitioner claims that he was denied the advantage of an instruction to the jury to regard Oliverez's testimony with distrust, since neither Petitioner nor Oliverez testified as a prosecution witness. See id.

The state appellate court found that "the instruction given by the trial court was not a misstatement of the law." Ex. 3 at 7. The instruction "plainly and correctly stated that

prosecution accomplice testimony that incriminates should be viewed with distrust." Id. The appellate court interpreted Petitioner's argument as "essentially that the word 'prosecution' should have been deleted from the given instruction so that all accomplice testimony would be covered by the instruction." Id. Moreover, the appellate court recognized a rational tactical purpose for not requesting a modification of CALJIC No. 3.18: "[a] modification of the instruction would have further emphasized Oliverez's testimony, as the jury would have been told to determine which parts tended to incriminate [Petitioner] and which parts did not." Id. at 8. Petitioner fails to demonstrate that defense counsel's failure to object to this instruction constituted deficient performance, nor establish any prejudice to him from counsel's omission. As the appellate court noted, there was a rational purpose for not requesting a modification to the instruction. Id.

### (c) Failure to Instruct the Jury to Related Third-Party Defense to the Prosecution's Burden of Proof

Petitioner next claims that his trial counsel should have requested a pinpoint instruction on third-party culpability that related to his theory on the burden of proof. Petition at A-10. The trial court instructed the jury pursuant to the language of CALJIC No. 2.90, that the prosecution had the burden of proving Petitioner guilty beyond a reasonable doubt and that Petitioner was entitled to a not guilty verdict if the jury had a reasonable doubt whether his guilt was "satisfactorily shown." The trial court later instructed the jury that it had to convict Petitioner of a lesser charge if it was not satisfied beyond a reasonable doubt that Petitioner was guilty of first degree murder, provided that it was satisfied beyond a reasonable doubt that Petitioner was guilty of the lesser crime. Ex. 3 at 17.

CALJIC No. 2.90 is the standard instruction set forth in California Penal Code section

1096.³ The appellate court noted that "[i]f [Petitioner] wished a pinpoint instruction relating the reasonable doubt standard to the crux of his case, he had a right to such instruction, but only upon request." Ex. 3 at 18. Petitioner now contends that counsel was ineffective in failing to request a pinpoint instruction. Petition at A-10. Nevertheless, Petitioner fails to demonstrate that defense counsel's failure fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-88. Moreover, Petitioner fails to demonstrate how counsel's failure resulted in prejudice. As the appellate court noted, "[t]he jury certainly knew [Petitioner's] theory – [Petitioner] testified and accused Oliverez of independently shooting Farfan. And other instructions correctly informed the jury as to the allocation of proof." Ex. 3 at 17.

A court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)); Prantil v. California, 843 F.2d 314, 317 (9th Cir.), cert. denied, 488 U.S. 861 (1988). Under the circumstances, the absence of a pinpoint instruction did not affect the outcome of the trial because a reasonable juror would not have believed that it was Petitioner's burden to prove beyond a reasonable doubt that Oliverez shot Farfan.

>  (d) <u>Failure to Object to the Court's and Prosecutor's Use of "the People" During Trial</u>

Petitioner contends that "[i]t is fundamentally incorrect and unfair to refer to the prosecuting bodies of the State of California as 'The People' in criminal cases." Petition at A-10. He maintains that the prosecution is part of the executive branch of the state, not part of the people. Id. The appellate court rejected this claim because Petitioner waived the argument by

---

³ California Penal Code section 1096(a) states "[i]n charging a jury, the court may read to the jury Section 1096, and no further instruction on the subject of the presumption of innocence or defining reasonable double need be given."

not objecting or raising the issue in the trial court below. Ex. 3 at 18. Here, upon review of this claim on the merits, Petitioner fails to demonstrate that counsel's failure resulted in deficient performance, nor establish any prejudice by the prosecution's use of the term "the People."[4]

In sum, Petitioner's claim of ineffective assistance of counsel fails on the merits.[5] The appellate court's rejection of Petitioner's claim of ineffective assistance of counsel was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent, nor was it based upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

(5) <u>Denial of Petitioner's Motion for a New Trial</u>

Finally, Petitioner contends that the trial court's denial of his motion for a new trial violated his rights to a fair trial and due process. Petition at A-11. The motion for new trial was based on newly discovered evidence of co-defendant Oliverez's post-trial confession. <u>Id</u>.

After the jury convicted Petitioner and Oliverez, Oliverez arranged to be interviewed by Petitioner's counsel. Ex. 3 at 22. In the interview, Oliverez related that he had shot Farfan with Farfan's gun in self-defense after Farfan became belligerent about Oliverez's supposed intimate relationship with Jessica Salazar, after which Farfan reached for the gun and the two wrestled over the gun. <u>Id</u>. Oliverez then testified at a joint evidentiary hearing, in support of his own motions for a new trial (one of which was grounded upon ineffective assistance of counsel

---

[4] California has a long history of designating the prosecution as "the People." <u>People v. McLaughlin</u>, 44 Cal. 435, 437 (1872).

[5] Respondent also addressed a claim that Petitioner's counsel failed to request a pinpoint instruction on intoxication. Resp. Mem. of P. & A. at 16-18. However, Petitioner does not specifically reference this claim in the instant petition. Petition at A-10. Rather, it appears that Petitioner presented this claim to the California Court of Appeal. Therefore, this Court declines to address the merits of the claim since the issue is not raised in the petition.

because counsel failed to defend on a self-defense theory) and in support of Petitioner's motion.[6] Id. At the hearing, Oliverez essentially repeated what he said in the interview. Id. He also admitted that he lied under oath at the trial at least twenty-eight times. Id. In denying Petitioner's motion, the trial court stated: "I simply do not believe this new evidence is worthy." Id.

A new trial is not automatically required when false evidence is discovered, and the mere existence of newly discovered evidence relevant to guilt is not grounds for federal habeas relief. Gordon v. Duran, 895 F.2d 610, 614 (9th Cir.1990). Petitioner must show that the newly discovered evidence probably would have resulted in his acquittal. Gordon, 895 F.2d at 614-15; Quigg v. Crist, 616 F.2d 1107, 1112 (9th Cir.), cert. denied, 449 U.S. 922 (1980); Jeffries v. Blodgett, 5 F.3d 1180, 1187-88 (9th Cir. 1993).

After Oliverez testified at the post-trial evidentiary hearing, the trial court concluded that nothing Oliverez said was worthy of belief.[7] As the appellate court noted, "[t]here is nothing manifestly irrational about such a conclusion. If one credits Oliverez's new trial testimony, Oliverez is a liar (for denying his involvement to the police) and perjurer [twenty-eight] times over; if one credits his jury testimony, he is a liar (for denying his involvement to the police) and a perjurer based on his new trial testimony." Ex. 3 at 23. Given Oliverez's history of lying, Petitioner fails to establish the probability that this new evidence of Oliverez's confession would result in his acquittal.

---

[6] The trial court denied Oliverez's motions before ruling on Petitioner's motion.

[7] Under California law, a motion for a new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial court. People v. Monroe, 162 Cal. App. 2d 248, 254-55 (1958) (no abuse of discretion in denying motion for new trial when trial court disbelieved co-defendant who testified at trial but waited until after the verdict to exculpate the defendant).

Regardless, the appellate court recognized that Petitioner was convicted of both first-degree murder and conspiracy to commit murder.  As the trial court noted, given the conspiracy conviction, it was immaterial who actually killed Farfan.  Even if a new trial were granted, and Petitioner was found not guilty of first-degree murder, the charge of conspiracy would remain.  Because Oliverez's post-trial testimony would not result in Petitioner's acquittal, the appellate court's rejection of Petitioner's claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent, nor was it based upon an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

## CONCLUSION

The Court concludes that Petitioner has failed to show any violation of his federal constitutional rights in the underlying state criminal proceedings.  Accordingly, the petition is denied.  The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: 5/12/06

JEREMY FOGEL
United States District Judge

A copy of this order was mailed to the following:

Adam LeRoy Caris
K-87833
CSATF - Corcoran
P.O. Box 5242
Corcoran, CA 93212

Sharon R. Wooden
CA State Attorney General's Office
455 Golden Gate Avenue
Suite 11000
San Francisco, CA  94102-7004